UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| LAURA FISCHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:14 CV 104 ACL |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Laura Fischer brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge (ALJ) found that, despite Fischer's multiple severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

**I. Procedural History**

On January 24, 2012, Fischer filed applications for DIB and SSI, claiming that she became unable to work due to her disabling condition on July 20, 2011. (Tr. 157-69.) Fischer's claims were denied initially. (Tr. 101-06.) Following an administrative hearing, Fischer's claims were

denied in a written opinion by an ALJ, dated August 14, 2013.  (Tr. 11-23.)  Fischer then filed a

request for review of the ALJ's decision with the Appeals Council of the Social Security

Administration (SSA), which was denied on September 5, 2014.  (Tr. 1-5.)  Thus, the decision of

the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Fischer claims that the ALJ erred in determining Fischer's mental

RFC.  Fischer also argues that the ALJ erred in failing to develop the record regarding Fischer's

physical RFC.

## II.  The ALJ's Determination

The ALJ found that Fischer met the insured status requirements of the Social Security Act

through December 31, 2016, and that she has not engaged in substantial gainful activity since her

alleged onset date of July 20, 2011.  (Tr. 13.)

In addition, the ALJ concluded that Fischer had the following severe combination of

impairments: disc protrusion at L4-L5, bilateral foraminal stenosis[1] at L5-S1, chronic obstructive

pulmonary disease ("COPD"), moderate one-vessel coronary disease,[2] depression, posttraumatic

stress disorder ("PTSD"), and a history of polysubstance abuse.  *Id.*  The ALJ found that Fischer

did not have an impairment or combination of impairments that meets or equals in severity the

requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 14.)

As to Fischer's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the Residual Functional Capacity to

---

[1]  The narrowing of the opening between two vertebrae through which nerves pass.  *Stedman's Medical Dictionary*, 756, 1832 (28th Ed. 2006).

[2]  Narrowing of the lumen of one of the coronary arteries, usually due to plaque buildup in the coronary arteries.  *Stedman's* at 554.

perform light work as defined in 20 CFR 404.1567(b) and
416.967(b). She needs to alternate between sitting and standing
positions for brief periods of time not to exceed a few minutes while
remaining at her workstation with little or no loss of production; can
occasionally climb ramps and stairs, but never climb ladders, ropes,
or scaffolds; can occasionally stoop, kneel, crouch, and crawl;
should avoid frequent exposure to vibration and hazards, such as
dangerous machinery and unprotected heights; is limited to simple
routine work, which is defined as unskilled within the meaning of
the Dictionary of Occupational Titles; and can tolerate occasional
contact with supervisors, co-workers, and the general public.

(Tr. 16.)

The ALJ found that Fischer's allegations regarding her limitations were not entirely
credible. (Tr. 17.) In determining Fischer's mental RFC, the ALJ indicated that she was
assigning "great weight" to the opinion of treating psychiatrist F. Perez-Magnelli, M.D., and
"partial weight" to state agency psychologist Stanley Hutson, and consultative psychologist
Patrick Finder. (Tr. 19-20.) With regard to Fischer's physical RFC, the ALJ stated that she was
according partial weight to the opinion of non-examining state agency physician Jack Bankhead,
M.D. (Tr. 19.)

The ALJ further found that Fischer was unable to perform any past relevant work. (Tr.
21.) There were other jobs, however, that exist in significant numbers in the national economy
that Fischer could perform. *Id.* The ALJ therefore concluded that Fischer has not been under a
disability, as defined in the Social Security Act, from July 20, 2011, through the date of the
decision. (Tr. 23.)

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability
insurance benefits protectively filed on December 7, 2011, the
claimant is not disabled under sections 216(i) and 223(d) of the
Social Security Act.

Based on the application for supplemental security income protectively field on December 7, 2011, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 23.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's

impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

## III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in

several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work."   *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her

age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir.

2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to

make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §

416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find the claimant is not disabled. If

the claimant cannot make an adjustment to other work, then the Commissioner will find that the

claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of

production shifts to the Commissioner, the burden of persuasion to prove disability remains on the

claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a,

416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms,

findings, functional limitations, and effects of treatment" in the case record to assist in the

determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a (b) (1),

416.920a (b) (1). If it is determined that a mental impairment exists, the Commissioner must

indicate whether medical findings "especially relevant to the ability to work are present or absent."

20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2). The Commissioner must then rate the degree of

functional loss resulting from the impairments in four areas deemed essential to work: activities

of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§

404.1520a (b) (3), 416.920a (b) (3). Functional loss is rated on a scale that ranges from no

limitation to a level of severity which is incompatible with the ability to perform work-related

activities. *See id.* Next, the Commissioner must determine the severity of the impairment based

on those ratings. *See* 20 C.F.R. §§ 404.1520a (c), 416.920a (c). If the impairment is severe, the

Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

## IV. Discussion

As noted above, Fischer argues that the ALJ erred in determining both her physical and mental RFC.

Residual functional capacity is defined as that which a person remains able to do despite her limitations. 20 C.F.R. § 404.1545(a), *Lauer v. Apfel,* 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. 20 C.F.R. § 404.1545(a); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination. *Id.; Hutsell v. Massanari,* 259 F.3d 707, 711–12 (8th Cir. 2001); *Lauer,* 245 F.3d at 703–04; *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Hutsell,* 259 F.3d at 712. However, although an ALJ must determine the claimant's RFC based upon all relevant evidence, the ALJ is not required to produce evidence and affirmatively prove that a claimant is able to perform certain functions. *Pearsall,* 274 F.3d at 1217 (8th Cir. 2001); *McKinney,* 228 F.3d at

863.   The claimant bears the burden of establishing her RFC.   *Goff,* 421 F.3d at 790.

## 1.   Mental RFC

Fischer argues that the ALJ erred in assigning "great weight" to the opinion of treating psychiatrist Dr. Perez-Magnelli, but not including all of the limitations found by Dr. Perez-Magnelli in Fischer's RFC.

In determining Fischer's mental RFC, the ALJ stated that Fischer has a longstanding history of depression and anxiety, for which she has utilized a combination of therapy and psychotropic medications, including Lexapro[3] and Celexa.[4]  (Tr. 18, 388-89, 586-610.)   The ALJ stated that Fischer's mental impairments are amenable to routine, conservative treatment. *Id.*   As support, the ALJ noted that upon mental status examination, Fischer has presented with only very transient, mild to moderate symptoms, including psychomotor agitation, an anxious or irritable mood, a blunted affect, and limited insight into her illness.   (Tr. 18, 586-610.)   She stated that Fischer's mental status examinations have otherwise failed to yield any objectively abnormal medical signs reasonably consistent with Fischer's allegations, such as symptoms of panic, anger, or uncontrolled depression.   *Id.*   The ALJ acknowledged that Fischer sought treatment for suicidal ideation in January 2013, but noted that Fischer was only observed for twenty-four hours before she was released.   (Tr. 18, 550-51.)   The record supports the ALJ's findings.

The ALJ next discussed Dr. Perez-Magnelli's opinion.   Dr. Perez-Magnelli completed a Medical Source Statement-Mental on May 31, 2013.   (Tr. 583-84.)   Dr. Perez-Magnelli expressed the opinion that Fischer was moderately limited in the following areas: the ability to

---

[3]   Lexapro is indicated for the treatment of depression and anxiety.   *See* WebMD, http://www.webmd.com/drugs (last visited March 10, 2016).
[4]   Celexa is indicated for the treatment of depression.   *See* WebMD, http://www.webmd.com/drugs (last visited March 10, 2016).

maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to change in the work setting; and set realistic goals or make plans independently of others. *Id.*

The ALJ stated that she was assigning "great weight" to the opinion of treating source Dr. Perez-Magnelli because his opinion is based upon a lengthy treating relationship with Fischer, and is consistent with the clinical findings gleaned therefrom. (Tr. 19.) The ALJ noted that Dr. Perez-Magnelli documented Fischer presenting with only transient psychologically-based symptoms, which were of mild to moderate severity. (Tr. 19, 586-610.) Dr. Perez-Magnelli assessed GAF scores between 50 and 60. *Id.* The ALJ accurately noted that a GAF score of 51 to 60 is indicative of moderate symptoms of mental dysfunction or moderate impairment in functioning.[5] (Tr. 20.) The ALJ also found that Dr. Perez-Magnelli's opinion was consistent with Fischer's self-reported daily activities, which revealed no more than moderate mental limitations. (Tr. 19.) Specifically, the ALJ noted that Fischer is able to care for her personal needs, perform routine household chores, prepare simple meals, care for her daughter, care for her

---

[5] A GAF score of 51 to 60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("*DSM IV-TR*").

two grandchildren during part of the relevant period, watch television, read, walk for short distances, visit with family and friends, and shop for groceries. (Tr. 15, 43-50.)

"'It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012–13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785–86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or chose between the opinions. *Martise v. Astrue,* 641 F .3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

The undersigned finds that the ALJ provided sufficient reasons for assigning great weight to Dr. Perez-Magnelli's opinion. Fischer saw Dr. Perez-Magnelli approximately monthly from

October 2010 through the date of his opinion in May 2013 for treatment and medication management. (Tr. 586-610.) As such, Dr. Perez-Magnelli has a significant treatment history with Fischer. As the ALJ noted, Dr. Perez-Magnelli noted only mild to moderate symptoms on mental status examinations, such as a depressed or anxious mood (Tr. 591, 592, 600, 601, 602, 603, 607), or a blunted affect (Tr. 602) on some visits. Dr. Perez-Magnelli's treatment notes, therefore, are consistent with the presence of moderate limitations in some areas.

The ALJ next discussed the opinion of non-examining state agency psychologist Stanley Hutson, Ph.D. (Tr. 19.) Dr. Hutson completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment on April 23, 2011. (Tr. 71-73, 76-77.) Dr. Hutson expressed the opinion that Fischer was moderately limited in her ability to maintain attention and concentration for extended periods, work in coordination with others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 76-77.)

The ALJ indicated that she was giving "partial weight" to the opinion of Dr. Hutson. (Tr. 19.) She stated that, as a state agency consultant, Dr. Hutson is familiar with the disability determination process and has specialized training and expertise. (Tr. 20.) The ALJ stated that Dr. Hutson's opinion is consistent with the medical record and with Fischer's self-reported daily activities. *Id.* The ALJ accurately analyzed Dr. Hutson's opinion. *See* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence).

Finally, the ALJ discussed the opinion of consultative psychologist Patrick Finder. (Tr. 20.) Fischer saw Dr. Finder for a consultative psychological examination on April 23, 2012. (Tr. 433-41.) Fischer reported a history of physical abuse by her ex-husband. (Tr. 440.) She reported strong symptoms of depression and anxiety, difficulty being around people, and that she easily begins to rage at people. *Id.* Fischer expressed concern that she would hurt someone because of the severity of her anger. (Tr. 441.) Dr. Finder found that Fischer could not sustain a forty-hour work week due to the severity of her anxiety and her range reactions to people. *Id.*

The ALJ gave "partial weight" to Dr. Finder's opinion. (Tr. 20.) The ALJ stated that Dr. Finder relied upon Fischer's self-reported symptomology, much of which was not reported to her treating sources. *Id.* The ALJ specifically noted that Fischer did not endorse uncontrollable rage during her treatment sessions with Dr. Perez-Magnelli, but did when meeting with Dr. Finder. The ALJ provided sufficient reasons for discrediting Dr. Finder's opinion.

As to Fischer's RFC, the ALJ limited Fischer to simple, routine, unskilled work; and only occasional contact with supervisors, co-workers, and the general public. (Tr. 16, 21.) The ALJ indicated that this determination is supported by Fischer's treatment history, the weighed medical opinion evidence, and her daily activities. (Tr. 21.)

Fischer argues that the ALJ erred in assigning great weight to Dr. Perez-Magnelli's opinion, yet failing to incorporate all the limitations found by Dr. Perez-Magnelli in Fischer's mental RFC. Fischer contends that the ALJ did not include any limitation concerning Fischer's deficit in pace, despite Dr. Perez-Magnelli's opinion that Fischer had a moderate limitation in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

Fischer's argument lacks merit. First, as previously noted, the ALJ was not required to rely entirely on a particular physician's opinion. *See Martise*, 641 F.3d at 927. In addition, the ALJ did not assign "controlling weight" to Dr. Perez-Magnelli's opinion, but instead afforded it "great weight." In assigning "great weight" to Dr. Perez-Magnelli's opinion, the ALJ was not obligated to adopt every opinion found by Dr. Perez-Magnelli. *See Arif v. Colvin*, No. 4:13CV-0442-DGK-SSA, 2014 WL 1790942, * 2 (W.D. Mo. May 6, 2014) ("[W]hile the ALJ did give 'great weight' to Dr. Egea's opinion, by giving it 'great weight' he was not required to accept every limitation the doctor suggested"); *McClure v. Colvin*, No. 4:12CV 1763RWS, 2014 WL 824268, * 7 (E.D. Mo. Mar. 3, 2014) (same).

Fischer relies on *Logan-Wilson v. Colvin,* No. 4:13CV1119JAR, 2014 WL 4681459, *6 (E.D. Mo. Sept. 19, 2014), in which it was found that the ALJ did not properly account for the claimant's moderate limitation in her ability to perform at a consistent pace when he included a limitation only to simple, non-detailed work. This case, however, is distinguishable. In *Logan-Wilson*, the claimant was found to have severe impairments of learning disability in reading and reading comprehension. 2014 WL 4681459, * 1. The ALJ gave "significant weight" to the opinion of the state agency physician, who found the claimant was moderately limited in the ability to perform at a consistent pace. *Id.* at * 5. The ALJ also assigned significant weight to the opinion of a consultative psychologist who found that the claimant's pace was "mildly slow." *Id.* at * 5. The Court found "based upon the totality of the evidence" that the ALJ did not properly account for the claimant's pace difficulties in the RFC, and directed the ALJ on remand to re-evaluate the RFC with respect to the claimant's pace limitation. *Id.* at 6.

In this case, unlike in *Logan-Wilson*, the state agency psychologist, Dr. Hutson, found that Fischer was "not significantly limited" in her ability to perform at a consistent pace. (Tr. 76.) As

previously noted, the ALJ accorded partial weight to Dr. Hutson's opinion. (Tr. 19.) Thus, there is medical evidence in the record supporting the ALJ's decision not to include a limitation with regard to pace in Fischer's RFC.

In sum, the ALJ properly weighed the medical opinion evidence when determining Fischer's mental RFC. The ALJ accorded great weight to the opinion of treating psychiatrist Dr. Perez-Magnelli, who found that Fischer had moderate limitations in several areas. Consistent with the opinions of both Dr. Perez-Magnelli and Dr. Hutson that Fischer had moderate limitations in her ability to maintain attention and concentration and with social interaction, the ALJ limited Fischer to simple, routine work and only occasional contact with supervisors, co-workers, and the general public. The ALJ's decision not to include a limitation with regard to pace is supported by Dr. Hutson's opinion. Thus, the ALJ's mental RFC is supported by substantial evidence on the record as a whole.

## 2. Physical RFC

Fischer next argues that the ALJ erred in failing to develop the record with regard to Fischer's physical RFC. Fischer contends that there was no evidence addressing Fischer's physical limitations resulting from her back impairment, and that the ALJ relied on her own inferences in assessing her RFC.[6]

In determining Fischer's physical RFC, the ALJ first discussed Fischer's subjective allegations of pain and limitation. Fischer testified that she experiences constant back pain, which has worsened over the past five years. (Tr. 17, 55.) Fischer testified that she can walk for only fifty feet before needing to stop and rest for up to ten minutes, can stand for thirty minutes at

_____

[6] The ALJ also found that Fischer's COPD and one-vessel coronary disease were severe impairments. Fischer's argument regarding the ALJ's physical RFC determination, however, focuses on limitations arising from her back impairment. The Court will limit its discussion accordingly.

a time, can sit for around ninety minutes at a time, can lift fifteen pounds, and needs to lie down periodically during the day.   (Tr. 17, 59.)

The ALJ found that Fischer's allegations regarding her back pain are not reasonably supported by the objective medical evidence of record.   (Tr. 17.)   The ALJ noted that a December 22, 2011 MRI revealed the presence of a broad-based central disc protrusion at L4-L5, and bilateral foraminal stenosis at L5-S1, primarily related to the facet joint, but no other significant abnormalities.   (Tr. 17, 283.)   The ALJ stated that Fischer has not presented with chronic motor, sensory, reflex, or strength deficits upon physical examination.   (Tr. 17, 378-90.) Rather, the ALJ noted that Fischer has presented with findings such as some tenderness at T12 and slightly brisk reflexes.   (Tr. 17-18, 372.)   The medical evidence discussed below supports the ALJ's findings.

Fischer presented to family physician Diane Jacobi, M.D., on August 19, 2011, requesting narcotics for pain in her rib area where a rib had been removed.   (Tr. 389.)   Dr. Jacobi indicated that this was not a sudden irritation but was chronic pain Fischer had been experiencing for years. *Id.*   Upon examination, Fischer was shaking and moving her feet in rhythm; she was agitated about her situation.   *Id.*   Dr. Jacobi referred Fischer to a pain clinic.   (Tr. 388.)

Fischer was hospitalized from September 19, 2011 to September 20, 2011, with muscle spasms caused by drug withdrawal.   (Tr. 300.)   Fischer stopped taking psychiatric medications due to financial reasons.   *Id.*   Fischer had an injury to her left rib cage that resulted in subsequent surgery due to chronic pain.   (Tr. 309.)   Fischer's drug screen was positive for opiates as well as for cannabinoids.   (Tr. 301.)   Fischer was counseled about taking illicit drugs as well as taking her medications.   *Id.*   A consulting internist stated that there appeared to be a volitional component to Fischer's muscle movements.   (Tr. 311.)   It was noted that Fischer did not need

any narcotic pain medications, and that medications should be kept to a minimum.   (Tr. 312.)

On December 5, 2011, Fischer presented to Dr. Jacobi with complaints of leg cramps.
(Tr. 384.)   Upon examination, Fischer was in no apparent distress, she moved all four extremities,
and no swelling was noted.   *Id.*   Dr. Jacobi referred Fischer to neurology.   (Tr. 383.)   On
December 16, 2011, Fischer was examined after visiting the emergency room with complaints of
leg cramps and low back pain.   (Tr. 382.)   Fischer showed no signs of sciatica; her spine was
non-tender; and she had paraspinal muscle tenderness.   *Id.*   Dr. Jacobi noted that Fischer had
never gotten the pain clinic referral or the neurology referral.   *Id.*   She ordered a CT scan of the
lumbosacral spine, and prescribed Flexeril[7] for muscle spasms.   *Id.*   On December 22, 2011,
Fischer presented for an examination, at which time she was "pleasant, asking about taking [Dr.
Jacobi's] prescription pad so she can write some prescriptions just jokingly, and otherwise in no
apparent distress."   (Tr. 380.)   Fischer had still not set up appointments for the pain clinic or
neurology clinic.   *Id.*   Upon examination, Fischer's spine was non-tender, and she moved all four
extremities.   *Id.*   During her examination, Fischer was "laughing and joking and not ever
commenting about the pain except that it hurts, but not showing any signs of limitation of
movement form her pain, interacting and joking with her daughter."   *Id.*   Dr. Jacobi diagnosed
Fischer with chronic pain and recommended she follow-up with the pain clinic and neurologist.
(Tr. 379.)   On December 23, 2011, Fischer called Dr. Jacobi's office requesting pain medication,
and became irritated when she was told Dr. Jacobi was not in the office.   (Tr. 378.)   Dr. Jacobi
stated that she prescribed Toradol[8] to last until Fischer began treatment at the pain clinic and that

---

[7]   Flexeril is indicated for the short-term treatment of muscle spasms.   *See* WebMD,
http://www.webmd.com/drugs (last visited March 10, 2016).
[8]   Toradol is a nonsteroidal anti-inflammatory drug indicated for the short-term treatment of
moderate to severe pain.   *See* WebMD, http://www.webmd.com/drugs (last visited March 10,
2016).

the pain clinic would manage her pain after that. *Id.*

Fischer presented to the Anesthesiology Pain Clinic on January 6, 2012, with complaints of lumbar back pain with radiation down both legs. (Tr. 371.) Fischer reported that her back pain started in 2005, following the rib removal surgery. *Id.* Upon physical examination, Fischer had a positive straight leg test bilaterally, but full strength throughout the bilateral lower extremities. (Tr. 372.) Fischer was diagnosed with lumbar radiculopathy and was given an epidural steroid injection. *Id.*

Fischer continued to see Dr. Jacobi for various complaints. On May 30, 2012, Fischer complained that one of her grandchildren she was caring for bit her. (Tr. 500.) Fischer was given a tetanus shot. *Id.*

Fischer underwent a lumbar epidural steroid injection on July 25, 2012. (Tr. 522.)

On August 17, 2012, Fischer presented to Dr. Jacobi with complaints of a bruise on her right leg, and occasional chest pain. (Tr. 498.) Dr. Jacobi recommended testing. (Tr. 499.) Fischer returned for follow-up on September 26, 2012, at which time she was in good spirits. (Tr. 497.) Dr. Jacobi indicated that Fischer had undergone testing, which revealed nonocclusive[9] coronary artery disease. *Id.* Dr. Jacobi counseled Fischer regarding quitting smoking. (Tr. 496.) Fischer received treatment for a sinus infection in October 2012 (Tr. 495), and for a rash in January 2013 (Tr. 493). On April 8, 2013, Fischer complained of upper respiratory symptoms. (Tr. 489.) Upon physical examination, Dr. Jacobi noted that Fischer's gait was within normal limits. (Tr. 491.) Dr. Jacobi diagnosed Fischer with upper respiratory infection, and again advised her to stop smoking. *Id.*

On February 25, 2013, Fischer presented to the Neurology Clinic upon the referral of Dr.

---

[9] Not blocking the coronary vessel. *Stedman's* at 1355.

Jacobi for a consultation of pain in the left side of her chest resulting from a boating accident seven years prior.  (Tr. 554-57.)   Fischer reported pain in the mid-back, which radiates from the back to the front.  (Tr. 555.)   Upon physical examination, Fischer had normal tone and strength in all four extremities, her sensory exam was normal, no tenderness was noted over any part of the spine, and she was able to walk on toes, heels, and tandem.  (Tr. 556.)   Fischer was referred to a pain or anesthesiology clinic for consideration of a nerve block.  (Tr. 557.)

On April 2, 2013, Fischer presented to the Orthopaedic Clinic, with complaints of low and middle back pain, and cramping down both legs since her boating accident.  (Tr. 558-61.)   Upon physical examination, Fischer was in no apparent distress, had good range of motion, intact sensation and strength, and negative straight-leg raise.  (Tr. 560.)   Her reflexes were noted to be slightly brisk.  *Id.*   It was noted that Fischer complained of neuropathic pain for which she had failed to get any improvement from injections in the past, and low back pain likely related to disk disease at L5-S1.  *Id.*   Fischer was started on Topamax.[10]  *Id.*

The medical evidence discussed above supports the ALJ's finding that, although Fischer suffers from a severe back impairment, physical examinations have revealed few abnormalities. Fischer has not presented with chronic motor, sensory, reflex, or strength deficits upon physical examination.   Fischer argues that examination revealed a positive straight leg raise.   It is true Fischer was noted to have a positive straight leg raise test bilaterally at the pain clinic in January 2012.  (Tr. 372.)   This was the only occasion, however, where Fischer's straight leg raise test was positive.   Fischer's subsequent examination at the Orthopaedic Clinic in April 2013 revealed a negative straight-leg raise test.  (Tr. 560.)   In addition, examinations have consistently noted good range of motion, full strength, normal sensation, and a normal gait.  (Tr. 372, 491, 556, 562.)

---

[10]   Topamax is indicated for the treatment of seizures.   *See* WebMD, http://www.webmd.com/drugs (last visited March 10, 2016).

The ALJ also discussed relevant credibility factors in determining Fischer's RFC. Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

The ALJ first stated that Fischer has not received the type of treatment one could reasonably expect given her allegations regarding disabling pain. (Tr. 19.) For example, Fischer testified at the hearing that she did not see a particular doctor for her back pain. (Tr. 54.) Fischer only received two steroid injections during the relevant period, one in January 2012 and one in July 2012. (Tr. 372, 522.) Fischer testified that she had not been referred to physical therapy or a surgical consultation. (Tr. 54.) The ALJ properly considered Fischer's conservative treatment when considering the credibility of her allegations of disabling pain. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (conservative treatment supported the ALJ's adverse credibility determination); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (conservative treatment, including exercises and medication, and lack of surgery supported ALJ's adverse credibility determination).

The ALJ next stated that Fischer's drug-seeking behavior detracted from her credibility. Fischer's drug-seeking behavior is well-documented in Dr. Jacobi's treatment notes. (Tr. 389, 380, 378.) On August 19, 2011, Dr. Jacobi noted that Fischer requested several times during the visit that she prescribe narcotics, as another doctor had stopped prescribing a narcotic pain medication. (Tr. 389.) Dr. Jacobi reiterated that she "would not be writing her for any narcotics." *Id.* On December 21, 2011, Fischer was laughing and joking and showing no signs of pain during her examination, and then asked Dr. Jacobi if she could take her "prescription pad

so she can write some prescriptions." (Tr. 380.) On December 23, 2011, Fischer called Dr. Jacobi's office requesting pain medication, and became irritated when Dr. Jacobi was not in the office. (Tr. 378.) Dr. Jacobi told Fischer she would not be prescribing pain medication and instructed her to receive medication from a pain management clinic. *Id.* She also suggested a drug treatment program. *Id.* Fischer's use of narcotic pain medication, as well as illegal drugs, was also documented in the records from her September 2011 hospitalization for muscle spasms related to drug withdrawal. (Tr. 300-12.) It was noted at that time that Fischer did not need any narcotic pain medication. (Tr. 301.) The ALJ properly considered Fischer's drug-seeking behavior when assessing the credibility of her allegations of disabling pain. *See Harvey v. Barnhart,* 368 F.3d 1013, 1015 (8th Cir. 2004) (finding drug seeking behavior was inconsistent with plaintiff's complaints of pain).

The ALJ found that Fischer's daily activities of cleaning, cooking, shopping, caring for her daughter, caring for her two grandchildren, reading, watching television, and walking for short distances inconsistent with her allegations of disabling pain. (Tr. 15, 19.) While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Fischer's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in assessing her credibility. *See Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that claimant watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible).

The ALJ pointed out other inconsistencies in the record. For example, the ALJ noted that Fischer denied caring for her grandchildren at the hearing, yet Fischer's treatment notes document otherwise. (Tr. 19, 45-46, 500.) Specifically, Dr. Jacobi's May 30, 2012 treatment notes state

that Fischer reported she was caring for two young grandchildren because their parents had both

been arrested.   (Tr. 500.)   Fischer had sought treatment on that date when one of her

grandchildren bit her.   *Id.*   At the hearing, Fischer testified that she did not care for her

grandchildren, but when questioned about Dr. Jacobi's treatment notes, Fischer stated, "Well,

they're there.   I mean I—they're there in my—where I watch them.   But I can't physically

lift—they're able to walk and…"   (Tr. 45.)   This inconsistency detracts from Fischer's

credibility.

The ALJ also noted that Fischer collected unemployment benefits in the third and fourth

quarters of 2011, during the relevant period.   (Tr. 19.)   The ALJ found that Fischer's holding

herself out as being able to work to the State, while simultaneously holding herself out to the SSA

as being unable to work detracted from her credibility.   (Tr. 19.)   *See Black v. Apfel,* 143 F.3d

383, 387 (8th Cir. 1998) (applying for unemployment compensation is evidence negating a

claimant's claim of disability).

Finally, the ALJ discussed the opinion of non-examining State agency physician Jack

Bankhead, M.D.   (Tr. 19-20.)   Dr. Bankhead expressed the opinion on September 10, 2012 that

Fischer had the RFC to perform light work.   (Tr. 455.)   The ALJ indicated that she was assigning

partial weight to this opinion, as it was based on a comprehensive review of the record and was

consistent with the record and Fischer's self-reported daily activities.   (Tr. 20.)

The ALJ made the following determination with regard to Fischer's physical RFC:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the Residual Functional Capacity to
> perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b).   She needs to alternate between sitting and standing
> positions for brief periods of time not to exceed a few minutes while
> remaining at her workstation with little or no loss of production; can
> occasionally climb ramps and stairs, but never climb ladders, ropes,
> or scaffolds; can occasionally stoop, kneel, crouch, and crawl;

> should avoid frequent exposure to vibration and hazards, such as
> dangerous machinery and unprotected heights.

(Tr. 16.)

Plaintiff relies on *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000) as support for her argument that the ALJ erred in failing to develop the record regarding her physical RFC. *Nevland* held that the ALJ failed to fully and fairly develop the record where there was "no *medical* evidence about how [the claimant's] impairments affect his ability to function now" and "the ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [the claimant's] RFC." *Nevland*, 204 F.3d at 858 (emphasis in original). The conclusion in *Nevland* was that the ALJ should have sought an opinion from the claimant's treating physicians or ordered a consultative examination. *Id.* Due to the lack of substantial evidence supporting the ALJ's RFC determination, the ALJ's decision was reversed and remanded. *Id.*

This case is distinguishable from *Nevland*. The claimant in *Nevland* provided medical evidence that documented his limited functional capabilities. *See Nevland*, 204 F.3d at 854-56. The ALJ in *Nevland* erred in disregarding this evidence and the claimant's testimony about his RFC solely based on the opinions of non-examining sources. *Id.* at 858.

In this case, there is no medical evidence in the record supporting any greater limitations than those found by the ALJ. Rather, the objective evidence supports the ALJ's determination that Fischer is capable of performing a limited range of light work. As previously discussed, the ALJ accurately stated that the treatment notes of the examining physicians reveal that Fischer's back impairment has not manifested as any chronic motor, sensory, reflex, or strength deficits. Rather, physical examinations have revealed good range of motion, full strength, normal sensation, a normal gait, and an ability to walk on her toes, heels, and tandem. (Tr. 372, 491, 556,

562.)   Fischer's most recent examination revealed a negative straight-leg raise test.   (Tr. 560.)

In addition, Dr. Jacobi noted on one occasion during the relevant period that, despite Fischer's

complaint of disabling pain, she was laughing during her physical examination and not showing

any signs of limitation of movement from her pain.   (Tr. 380.)   Thus, there was sufficient

medical evidence in the record for the ALJ to determine Plaintiff's physical RFC and Plaintiff has

failed to show any prejudice due to the ALJ's failure to order a consultative examination.

In addition to the medical evidence from the examining physicians discussed above, the

ALJ's determination is supported by the opinion of State agency physician Dr. Bankhead.

Further, the ALJ found that Fischer's allegations of disabling pain were not credible due to factors

such as her daily activities, drug-seeking behavior, and other inconsistencies in the record.   The

ALJ's determination regarding Plaintiff's physical RFC is supported by substantial evidence in the

record as a whole.   "[T]he burden of persuasion to prove disability and demonstrate RFC [is] on

the claimant."   *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010).   For the foregoing reasons,

Fischer has not established that the ALJ erred in assessing her physical RFC.

After determining Fischer's RFC, the ALJ found that Fischer was unable to perform any

past relevant work.   (Tr. 21.)   The ALJ properly relied on the testimony of a vocational expert to

find that Fischer could perform other work existing in significant numbers in the national economy

with her RFC, including both light and sedentary unskilled jobs of small products assembler,

optical lens inserter, dowel inspector, and table worker.   (Tr. 22, 62-63.)   *See Robson v. Astrue*,

526 F.3d 389, 392 (8th Cir. 2008) (holding that a vocational expert's testimony is substantial

evidence when it is based on an accurately phrased hypothetical capturing the concrete

consequences of a claimant's limitations).   Thus, the ALJ's decision finding Fischer not disabled

is supported by substantial evidence.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

Dated:  March 25, 2016

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE